# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DONMAR, INC., )
)
    Plaintiff, )
)
v. )   No. 02 C 1482
)
SWANKY PARTNERS, INC., )
)   Judge Marvin E. Aspen
    Defendant. )

**FILED**

MAY 0 9 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**

MAY 1 0 2002

## NOTICE OF FILING

TO:   Margaret M. Duncan, Keith M. Stolte, James E. Griffith, McDERMOTT, WILL & EMERY, 227 West Monroe, Suite 4400, Chicago, Illinois 60606

    PLEASE TAKE NOTICE that on the **9th** day of **May, 2002**, we filed with the Clerk of the United States District Court, Eastern Division, certain **DEFENDANT'S MOTION TO DISMISS**, a copy of which is attached hereto.

                    PRETZEL & STOUFFER, CHARTERED

                    _____

| | |
|---|---|
| James J. Wolfson | One of the Attorneys for Defendant, |
| Heather B. Sachs | SWANKY PARTNERS, INC. |
| MINTZ LEVIN COHN | Robert Marc Chemers |
| FERRIS GLOVSKY & POPEO, P.C. | Daniel G. Wills |
| One Fountain Square | William W. Elinski |
| Suite 400 | One South Wacker Drive |
| 11911 Freedom Drive | Suite 2500 |
| Reston, Virginia 20190 | Chicago, Illinois 60606 |
| (703) 464-4800 | (312) 346-1973 |

## PROOF OF SERVICE

    The undersigned, a non-attorney, state that I served a true and correct copy of this Notice of Filing with corresponding document upon the above-mentioned parties by mailing a copy to all counsel as shown above by depositing same in the U.S. mail at One South Wacker Drive, Chicago, Illinois, by 5 p.m. on the 9th day of May, 2002, with proper postage prepaid.

*Mary Ellen McNulty*

Subscribed and sworn to before me this 9th day of May, 2002

      **OFFICIAL SEAL**
      JOAN M CRABTREY
      NOTARY PUBLIC, STATE OF ILLINOIS
      MY COMMISSION EXPIRES:00/00/00

*Crabtrey*
NOTARY PUBLIC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DONMAR, INC.,            )
                             )
       Plaintiff,      )

**FILED**

MAY 0 9 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

v.                  )    No. 02 C 1482

SWANKY PARTNERS, INC.,  )    Judge Marvin E. Aspen

       Defendant.    )

**DOCKETED**

MAY 1 0 2002

## DEFENDANT'S MOTION TO DISMISS

NOW COMES the Defendant, SWANKY PARTNERS, INC., and, pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, makes and files this its Motion to Dismiss the Complaint

filed by Plaintiff Donmar, Inc. for lack of jurisdiction over the person of Defendant, and in support

thereof respectfully shows the Court as follows:

Defendant's entire business consists of the ownership and operation of an upscale cocktail

lounge and nightclub located in Atlanta, Georgia. Plaintiff, which owns a bar located in Chicago,

Illinois, filed its Complaint against Defendant in the Eastern Division of the Northern District of

Illinois because it was the most convenient and cost-effective jurisdiction for it to bring this action,

as well as the fact that this Court is a burdensome and expensive locale for Defendant to be forced

to litigate. Whatever merit Plaintiff's decision to file in this Court may or may not have as a

litigation tactic, such a strategy does not obviate the necessity that, pursuant to both the United States

and Illinois Constitutions, Defendant must have such "minimum contacts" with Illinois that the

assertion of jurisdiction over its person therein does not offend "traditional notions of fair play and

substantial justice."



As demonstrated below, as well as by the Affidavit of Paul Gibbs attached hereto as Exhibit A and the Memorandum of Law in Support of this Motion filed concurrently herewith, Defendant does not have such contacts with this jurisdiction and justice compels the dismissal of the Complaint in this action. For example, Defendant is a Georgia corporation and is not qualified to do business in Illinois. Defendant has no place of business in Illinois, owns no real or personal property therein, and maintains no Illinois telephone listing, bank account or mailing address. Defendant does not advertise in publications specifically targeting Illinois customers, does no business with residents of Illinois and derives no revenue therefrom. Under these circumstances, Defendant's operation of a website that allows users to sent e-mails to Defendant and sign-up for Defendant's mailing list, but does not enable users to purchase Defendant's services, does not make Defendant's conduct and connection with Illinois such that it should have reasonably anticipated being haled into Court there. Finally, Defendant states that the dismissal of the Complaint does not leave Plaintiff without a cause of action if it insists on continuing with litigation. Defendant concedes that it is amenable to jurisdiction in the Atlanta Division of the United States District Court for the Northern District of Georgia, and that counsel for Defendant would accept service of process on Defendant's behalf for any action filed therein.

2

WHEREFORE, for the foregoing reasons as well as those set forth in the pleadings and attachments filed in support hereof, Defendant respectfully requests that its Motion to Dismiss be granted, and that the Court award Defendant what other additional relief it deem just and proper.

Respectfully submitted,

PRETZEL & STOUFFER, CHARTERED

Daniel G. Wills

Robert Marc Chemers
Daniel G. Wills
William W. Elinski
Pretzel & Stouffer, Chartered
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606-4673
Telephone (312) 346-1973
Facsimile: (312) 346-8242

James J. Wolfson, *Admitted Pro Hac Vice*
Heather B. Sachs, *Admitted Pro Hac Vice*
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, PC
One Fountain Square, Suite 400
11911 Freedom Drive
Reston, Virginia 20190
Telephone: (703) 464-4800
Facsimile: (703) 464-4895
Attorneys for Defendant, SWANKY PARTNERS, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DONMAR, INC.,                          )
           **FILED**          )
     Plaintiff,                    )
           MAY 0 9 2002             )
   v.                                          )     No. 02 C 1482
                              )
SWANKY PARTNERS, INC.,  MICHAEL W. DOBBINS **URT**  )   Judge Marvin E. Aspen
           CLERK, U.S. DISTRICT COURT      )
     Defendant.                   )

**DOCKETED**

**MAY 1 0 2002**

## NOTICE OF FILING

TO:    Margaret M. Duncan, Keith M. Stolte, James E. Griffith, McDERMOTT, WILL & EMERY, 227 West Monroe, Suite 4400, Chicago, Illinois 60606

     PLEASE TAKE NOTICE that on the **9th** day of **May, 2002**, we filed with the Clerk of the United States District Court, Eastern Division, certain **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**, a copy of which is attached hereto.

                                     PRETZEL & STOUFFER, CHARTERED

| | |
|---|---|
| James J. Wolfson | One of the Attorneys for Defendant, |
| Heather B. Sachs | SWANKY PARTNERS, INC. |
| MINTZ LEVIN COHN | Robert Marc Chemers |
| FERRIS GLOVSKY & POPEO, P.C. | Daniel G. Wills |
| One Fountain Square | William W. Elinski |
| Suite 400 | One South Wacker Drive |
| 11911 Freedom Drive | Suite 2500 |
| Reston, Virginia 20190 | Chicago, Illinois 60606 |
| (703) 464-4800 | (312) 346-1973 |

## PROOF OF SERVICE

     The undersigned, a non-attorney, state that I served a true and correct copy of this Notice of Filing with corresponding document upon the above-mentioned parties by mailing a copy to all counsel as shown above by depositing same in the U.S. mail at One South Wacker Drive, Chicago, Illinois, by 5 p.m. on the 9th day of May, 2002, with proper postage prepaid.

                                  *Mary Ellen McNulty*

Subscribed and sworn to before me this 9th day of May, 2002.

           OFFICIAL SEAL
           JOAN M CRABTREY
           NOTARY PUBLIC, STATE OF ILLINOIS
           MY COMMISSION EXPIRES:08/18/04

                              *Crabtrey*
                              NOTARY PUBLIC

                                                         8

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DONMAR, INC.,

      Plaintiff,

v.

SWANKY PARTNERS, INC.,

      Defendant.

)
)
)
)
)
)
)
)
)

No. 02 C 1482

Judge Marvin E. Aspen

**FILED**
MAY 0 9 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**
MAY 1 0 2002

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Swanky Partners, Inc. ("Defendant") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(2) for lack of jurisdiction over the person of Defendant.

## I. FACTUAL BACKGROUND

Defendant owns and operates a successful, single location, upscale cocktail lounge and nightclub located in Atlanta, Georgia that caters to young professionals. See *Affidavit of Paul Gibbs at ¶4 attached to Defendant's Motion to Dismiss as Exhibit A* (hereinafter [Gibbs Aff. at ¶4] ). Defendant selected the name "The Leopard Lounge" for its business because it wanted to create a 1950s/1960s-style nightclub, and the leopard print was a very popular décor item during that era and called to mind a retro design scheme. [Gibbs Aff. at ¶5]. At no time during the name selection process for its nightclub, which opened in December 1997, did Defendant have knowledge of Plaintiff or Plaintiff's nightclub. [Gibbs Aff. at ¶6].

Defendant does not have any business contacts with the State of Illinois. [Gibbs Aff. at ¶¶7-10]. Defendant (a Georgia corporation) is not incorporated in the State of Illinois, does not have a place of business in Illinois, is not qualified or registered to do business in Illinois, nor does it have



a registered agent for service of process in Illinois. [Gibbs Aff. at ¶7]. Moreover, Defendant maintains no telephone listing, mailing address or bank accounts in Illinois. [Gibbs Aff. at ¶9]. Defendant derives no revenue from Illinois entities or individuals, as it does not have any contracts in place with Illinois residents and has never intentionally solicited or advertised directly to Illinois customers. [Gibbs Aff. at ¶11]. Defendant has no contracts with any vendors, purveyors or suppliers in Illinois. [Gibbs Aff. at ¶10]. There are no Illinois residents on Defendant's mailing list. [Gibbs Aff. at ¶16]. Indeed, when a few non-Georgia residents signed up for Defendant's mailing list in recent years, Defendant intentionally removed them from the mailing list because Defendant only targets Georgia residents. [Gibbs Aff. at ¶16].

Plaintiff asserts in its Complaint at ¶5 that Defendant is subject to personal jurisdiction through "the provision of its services" and through Defendant's website, www.leopardlounge.com (the "Current Website"). The Current Website, some screen shots of which are attached hereto as Exhibit B, was launched in October 2001. From 1998 to October 2001, Defendant maintained a website at the same url (the "Original Website") that was essentially an online advertisement for Defendant's nightclub and contained absolutely no interactive features. The Original Website did not offer goods or products for sale, nor could visitors e-mail Defendant or join an online mailing list. [Gibbs Aff. at ¶12].

As evidenced by Exhibit B, the Current Website also merely intended to inform visitors about and promote Defendant's nightclub to customers who live in and around Atlanta, Georgia. For example, the Current Website contains driving directions to Defendant's nightclub only from locations within Atlanta, Georgia. Defendant still does not sell any products or services through the Current Website. In fact, the only difference between the Original and Current Websites is that the

2

Current Website accepts email from visitors and allows visitors to sign-up for a mailing list. Defendant does not advertise The Leopard Lounge anywhere else on the Internet apart from its Current Website, in any national publications, or in any publications targeted to Illinois residents. [Gibbs Aff. at ¶11].

## II. <u>ARGUMENT AND CITATION OF AUTHORITIES</u>

**A.   Plaintiff Cannot Meet Its Burden Of Proving That Defendant Had The Constitutionality Mandated "Minimum Contacts" With Illinois Or That The Illinois Long-Arm Statute Provides For Service In This Case.**

Because Plaintiff brought its Complaint under the Lanham Act, which does not authorize nationwide service of process, <u>see</u> 15 U.S.C. §1121, Plaintiff must demonstrate that the Defendant "could be subjected to the jurisdiction of a court of general jurisdiction in [Illinois]." Fed. R. Civ. P. 4(k)(1)(A). Personal jurisdiction over a non-resident defendant is proper in an Illinois court only when a plaintiff has proven: (1) jurisdiction is authorized under the Illinois long-arm statute, and (2) the minimum contacts required by due process are present. *FMC Corp. v. Varonos,* 892 F.2d 1308, 1310 (7th Cir. 1990).

In the Seventh Circuit, the plaintiff has the burden of demonstrating the existence of personal jurisdiction over a nonresident defendant. <u>See</u> *McIlwee v. ADM Indus., Inc.,* 17 F.3d 222, 223 (7th Cir. 1994). In Illinois, the plaintiff bears the burden of establishing personal jurisdiction over a nonresident defendant by a preponderance of the evidence and must allege in the complaint facts upon which jurisdiction is based. *Johnson v. Ortiz,* 244 Ill. App. 3d 384, 388, 614 N.E.2d 408, 411 (Ill. App. Ct. 1993); *Bobka v. Cook County Hosp.,* 117 Ill. App. 3d 359, 453 N.E.2d 828 (Ill. App. Ct. 1983).

In the Complaint, Plaintiff merely makes conclusory statements to the effect that Defendant is doing business in interstate commerce and operates the Current Website. See *Complaint, pp. 2-6*. Plaintiff does not point out any specific contacts that Defendant has had with Illinois, nor does it allege that Defendant has purposefully availed itself of the forum.

Defendant has submitted in support of its Motion to Dismiss an Affidavit establishing that insufficient contacts exist for the proper exercise of personal jurisdiction over Defendant by this Court. [See Gibbs Aff.]. Where well-alleged facts within an affidavit are not contradicted by counter-affidavit, they must be taken as true notwithstanding the existence of contrary averments in the other party's pleadings. *Finnegan v. Les Pouvoiries Fortier, Inc.,* 205 Ill. App. 3d 17, 562 N.E.2d 989 (Ill. App. Ct. 1990). Accordingly, if the statements in Mr. Gibbs' Affidavit are not refuted by counter-affidavit, the facts alleged therein must be accepted as true. *Finnegan,* 205 Ill. App. 3d at 24.

As will be demonstrated below, Defendant cannot meet either prong of the jurisdictional test set forth in FMC. First, Defendant has no contacts with Illinois, much less the constitutionally mandated "minimum contacts." Second, the Illinois long-arm statute does not extend to permit service of Defendant in this case.

**B.** **Federal Due Process Requires That Defendant Have Such Minimum Contacts With Illinois That The Assertion of General Or Specific Jurisdiction Over It By This Court Does Not Offend Traditional Notions Of Fair Play And Substantial Justice**

Federal due process requires "minimum contacts" with the forum state such that requiring the defendant to litigate in the forum state does not offend "traditional notions of fair play and

4

substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).[1]  The analysis under

this standard is determined by whether the state seeks "general" or specific" jurisdiction.

>   **C.     Defendant Does Not Have Sufficient "Minimum Contacts" With Illinois
>   For It To Be Subject To Either General Or Specific Personal
>   Jurisdiction Therein Defendant has no traditional business contacts with
>   Illinois that would subject it to general jurisdiction in Illinois**

General jurisdiction requires the defendant to maintain continuous and systematic contacts

with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984).

Mr. Gibb's Affidavit plainly demonstrates that Defendant has no such contacts and has not

"purposefully availed" itself of the privilege of doing business in the State of Illinois – Defendant

has no official or unofficial presence or status in Illinois, does not have a telephone listing, bank

account or address, does not advertise in the state, distribute products in the state, target Illinois

residents in any way, or derive revenue from or have any contracts with any Illinois residents. [Gibbs

Aff. at ¶¶7-11]. Such factors are recognized by Illinois courts as indicative of a lack of systematic and

continuous contacts that would subject Defendant to general jurisdiction in Illinois.[2]

---

[1]  Some courts in federal question cases have indicated that the Fifth Amendment due process clause applies and is satisfied if the defendant passes a threshold of "minimum contacts" with the United States. *See,* e.g., *United States v. Martinez De Ortiz,* 910 F.2 d 376, 381-82 (7th Cir. 1990). These decisions have usually involved questions of personal jurisdiction over foreign nationals or foreign corporations, *see,* e.g., *United Rope Distrib. v. Seatriumph Marine Corp.,* 930 F.2d 532, 535-36 (7th Cir. 1991), or where Congress has authorized nationwide service of process. Because the Lanham Act does not authorize such nationwide service of process and Defendant is not a foreign corporation, a Fifth Amendment due process analysis is not appropriate in this case.

[2]  See *Hot Wax, Inc. v. Stone Soap, Co., Inc.,* 1999-2 Trade Cas. (CCH) P72,569 (N.D. Ill. 1999) (holding that defendant's contacts with Illinois were not systematic and continuous because defendant: (1) produces all of its own products [out of state] and does not contract with any production or distribution company in Illinois; (2) is not licensed to do business in Illinois: (3) does not have any offices or warehouses in Illinois; (4) does not maintain an address, telephone number, or post office box in Illinois; (5) does not have any officers, directors, or employees who reside in Illinois; (6) does not advertise in any Illinois publications specifically targeting Illinois customers; and (7) less than .5 percent of its annual sales [are] derived from Illinois.)

Given its lack of traditional business contacts with Illinois, Defendant is clearly not "doing business" therein under Section 2-204 of the Code of Civil Procedure, 735 ILCS 5/2-204, and, therefore, not subject to general jurisdiction. The term "doing business" generally means that "the corporation is conducting business in Illinois of such a character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and law of the district in which it is served." *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 201 (Ill. 1981). This standard requires that the corporation be engaged in "regularity of activity" amounting to more than "isolated and sporadic" operations. *Id.* at 202. Because Defendant does not have any, much less isolated or sporadic contacts with Illinois, it should not be deemed to be "doing business" there and subject to general jurisdiction.[3]

## 2. Defendant's website does not subject it to specific jurisdiction in Illinois

Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Helicopteros,* 466 U.S. at 414. In determining whether the exercise of specific jurisdiction over a non-resident defendant comports with due process, the critical inquiry is "whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). This minimum contacts requirement is only satisfied for specific jurisdiction if there is "some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State." *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 592 (7th Cir. 1984) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958) and *Snyder v. Smith,* 736 F.2d 409, 415 (7th Cir. 1984)). Crucial in

---

[3] Defendant is also, therefore, not transacting any business with Illinois for purposes of the Illinois Long Arm Statute. 735ILCS 5/2-209(a)(1).

determining whether the minimum contacts exist is the foreseeability that "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp.,* 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, (1980)).[4]

Because Defendant clearly has no direct or purposeful contacts whatsoever with Illinois, the Court's assertion of specific personal jurisdiction would have to be based solely on Defendant's maintenance of the Current Website. In determining what type of Internet activity is sufficient to establish personal jurisdiction in Illinois, courts in the Northern District of Illinois have utilized what has been referred to as the *Zippo* "sliding scale" approach, which posits that the "likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D. Pa. 1997).[5] Under *Zippo,* Internet activities/websites are divided into three categories: (1) where a defendant clearly transacts business over the Internet through its active website; (2) where a defendant maintains an interactive website that can exchange information with the host computer; and (3) where a defendant maintains a passive website that is only informative in nature. *Zippo,* 952 F.Supp. at 1123-25.

---

[4] Like the federal due process standard, the Illinois Constitution requires the Court to inquire whether it is "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill. 2d 244, 565 N.E.2d 1302, 1316 (Ill. 1990). The defendant's connection with Illinois should not be merely random, fortuitous, or attenuated, rather, the connection should enable the defendant "to predict that it might be subject to the jurisdiction of this state." *Autotech Controls Corp. v. K.J. Elec.Corp.,* 256 Ill. App. 3d 721, 628 N.E.2d 990, 995-96 (1993). Because there is scant case law interpreting the due process requirement under the Illinois Constitution, most courts combine their due process analyses under the federal standard. See *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272 (7th Cir. 1997); see also *Mors v. Williams,* 791 F.Supp. 739, 743 (N.D. Ill. 1992).

[5] See, e.g., *Ty Inc. v. Clark,* 2000 U.S. Dist. LEXIS 383, No. 99 C 5532 at 8 (N.D. Ill. Jan. 14, 2000); *Watchworks, Inc. v. Total Time, Inc.,* 2002 U.S. Dist. LEXIS 4491, No. 01 C 5711 at 15 (N.D. Ill. May 6, 1999).

Courts have generally extended personal jurisdiction to commercial sites that fall within category (1), above, in that such sites market and sell goods by taking orders and entering into contracts online. Such contracts are considered to be purposeful availments of the forum state.[6] In this case, Defendant did and does not sell any products or services through the Original or Current Websites, nor does it enter into any contracts online. Therefore, Defendant's Internet activity clearly does not fit within the first *Zippo* category.

In contrast, courts have been very reluctant to extend personal jurisdiction where a defendant's website falls within category (3), above, in that such Internet activity only provides accessible information that is analogous to an advertisement. See *MJC-A World of Quality, Inc. v. Wishpets Co., Ltd.,* No. 00 C 6803, 2000 U.S. Dist. LEXIS 13178, at *15-16 (N.D. Ill. Aug. 27, 2001) (holding that the exercise of personal jurisdiction was improper because the website merely listed Defendant's contact information, but did not enable customers to purchase products or exchange information with Defendant). Defendant's Original Website would fall into this category and would clearly not be an appropriate basis for the assertion of personal jurisdiction.

Defendant concedes that its Current Website falls within category (2), above, because, while it does not make products or services available for sale or enter into contracts with users, it does enable users to e-mail Defendant and gives users the option of signing up for Defendant's mailing list. In the case of websites such as " category (2)" websites, where the interaction between website

---

[6] See *Ty, Inc. v. Baby Me, Inc.,* No. 00 C 6016, 2001 U.S. Dist. LEXIS 5761, at *12-13 (N.D. Ill. Apr. 20, 2001) (holding that the exercise of personal jurisdiction was proper because Defendant sold products through its website and targeted residents outside of its own state by containing out-of-state order forms); See also *Sch. Stuff, Inc. v. Sch. Stuff, Inc.,* No. 00 C 5593, 2001 U.S. Dist. LEXIS 23382, at *9-11 (N.D. Ill. May 17, 2001) (holding that the exercise of personal jurisdiction was proper because Defendant sold products through its website and made a significant number of online sales to Illinois residents).

and user falls short of an actual sale or offer for sale, courts assess on a case-by-case basis whether the exercise of jurisdiction is proper. In the Northern District of Illinois, websites such as Defendant's Current Website, without additional contacts which do not exist in this case, have been deemed insufficient to support the exercise of personal jurisdiction over a non-resident defendant. See *Ty Inc. v. Clark,* No. 99 C 5532, 2000 U.S. Dist. LEXIS 383, at *9-10 (N.D. Ill. Jan. 14, 2000) (no personal jurisdiction where users could e-mail the Defendant requesting information about Defendant's products but where users had to print order form to place orders for Defendant's products via fax or mail); See also *Ameritech Services, Inc. v. SCA Promotions, Inc.,* No. 99 C 4160, 2000 U.S. Dist. LEXIS 3067, at *12-13 (N.D. Ill. Mar. 3, 2000) (no personal jurisdiction where defendant's website advertised its financial services and provided a means to e-mail company officials and obtain price quotes but did not enable customers to buy and sell services online) and *Trost v. Bauer,* No. 01 C 2038, 2001 WL 845477, at *11 (N.D. Ill. July 24, 2001) (no personal jurisdiction where defendant's website contained toll-free numbers, enabled customers to e-mail, and contained advertisements not shown to target Illinois in particular).

### 3.    Personal jurisdiction should not be asserted over website operators such as Defendant that do not also have non-Internet contacts with the forum

Where non-resident defendant's internet activity consists of the operation of a website that does not offer goods or services for sale, as in the Original and Current Websites, courts in the Northern District of Illinois have been reluctant to assert personal jurisdiction absent the presence of non-Internet contacts with the state. See *Transcraft Corp. v. Doonan Trailer Corp.,* 45 U.S.P.Q.2d 1097, 1103 (N.D. Ill. 1997) (Where defendant maintained website that enabled users to exchange e-mails with defendant, defendant's Internet presence alone did not create personal

9

jurisdiction; however, defendant's Internet presence in combination with some additional "entrance" into the forum would have sufficed). Recently, in *Watchworks, Inc. v. Total Time, Inc.*, No. 01 C 5711, 2002 U.S. Dist. LEXIS 4491, at *23 (N.D. Ill. Mar. 18, 2002), the Northern District Court of Illinois analyzed whether a website very similar to Defendant's Current Website would subject the website operator to personal jurisdiction, and held that an additional "entrance" into the forum was needed.

In *Watchworks*, the plaintiff attempted to convince the court to assert jurisdiction in a trademark claim over the defendant, a California corporation operating in California, based on the defendant's website. In that case, the defendant's website contained contact information (including toll-free numbers) where customers could call to order products and have them shipped, provided an e-mail address where customers could communicate with the defendant regarding products and sales, and enabled customers to join defendant's mailing list online. Attempting to reconcile the inconsistent line of decisions in the district involving similar facts, the *Watchworks* court asserted, "….personal jurisdiction is typically determined based not only on a defendant's Internet activities but also on its non-Internet activities…[thus] this court will refer also to the 'effects' analysis to determine whether defendant's contacts meet constitutional minimums." *Watchworks*, 2002 U.S. Dist. LEXIS 4491, at *19-20.

Under the traditional effects doctrine test in trademark infringement cases, a court should consider: (1) whether the defendant's tortious actions were intentional; (2) if those actions were expressly aimed at the forum state; and (3) such actions cause harm to the plaintiff in the forum state (which the defendant knows is likely to be suffered). See *Euromarket Designs, Inc. d/b/a Crate & Barrel v. Crate & Barrel Limited*, 96 F. Supp. 2d 824 (N.D. Ill. 2000) (citing *Calder v. Jones*, 465

U.S. 783, 789-90 (1984)) holding that personal jurisdiction was proper because defendant, whose infringement was willful, had a commercial website that was targeting Illinois residents, used Illinois-based vendors and attended trade shows in Illinois). After applying this test and determining that there were no non-Internet activities through which defendant had contacts with the forum, the *Watchworks* court stated: "[h]ere the court cannot infer from the evidence before it that defendant was intentionally registering and targeting its website at Illinois or Watchworks based on the content of its website. Rather, an individual who accesses the website would learn that defendant directs its business at consumers within its purported market area of southern California." *Watchworks*, 2002 U.S. Dist. LEXIS 4491, at *25.

As in *Watchworks*, Defendant in this case has no non-Internet contacts with the forum state, and its slightly interactive Current Website alone is not enough to confer jurisdiction. Defendant's conduct fails to meet the effects test because Defendant 's alleged tortious actions (which are categorically denied) are, at a minimum, unintentional as Defendant had no knowledge of Plaintiff before it selected its name. Moreover, Defendant's actions have not been expressly aimed at Illinois and directed toward Plaintiff. As stated earlier, it is apparent from the Current Website that Defendant directs its business at consumers within its market area of Atlanta, Georgia, because the Current Website only contains information about local events and directions from within Atlanta. See *Exhibit B*.

**D.      The Assertion Of Personal Jurisdiction Over Defendant Would Grossly Offend Traditional Notions Of Fair Play And Substantial Justice**

Assuming, *arguendo,* that Defendant did have sufficient minimum contacts, the court must then consider if, in light of those minimum contacts and other considerations, the exercise of

11

jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316. The "other considerations" include "the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 113 (1987). Illinois courts consider the interests of the state involved and the relative convenience of litigating in the forum to be the most important of these factors. *R-Five, Inc. v. Sun Tui, Ltd.,* 1995 U.S. Dist. LEXIS 13360, No. 94 C 4100 (N.D. Ill. Sept, 12, 1995).

An analysis of these factors demonstrates that the exercise of jurisdiction over Defendant would still be unwarranted as contrary to the well-settled notions of fair play and substantial justice. In this case, the state of Illinois has no greater interest in the case than any other state because the case is not based on Illinois law, but rather on the Lanham Act, a federal statute. Whereas a court may be more likely to assert personal jurisdiction over a foreign defendant in order to ensure that a plaintiff is able to resolve the case within the U.S. legal system, here the non-resident defendant is a Georgia corporation. Defendant concedes that it is subject to personal jurisdiction in the Northern District of Georgia, and Defendant's counsel is willing to accept service of process in the event Plaintiff files an action there against Defendant.

It is uncontroverted that Defendant is a single-location enterprise located some one thousand (1,000) miles from the Court, and that it is tremendously inconvenient for Defendant to litigate in this forum. Plaintiff should not be allowed to force Defendant into litigation in Plaintiff's own backyard where Defendant does not have sufficient contacts with the forum and where litigating in such forum will place an enormous financial strain on Defendant.

Defendant simply does not have the requisite minimum contact with Illinois to ever have reasonably foreseen being haled into court there.

12

### E. The Illinois Long-Arm Statute Does Not Authorize The Assertion Of Personal Jurisdiction Over Defendant

The Illinois long-arm statute authorizes jurisdiction on any basis permitted by the Illinois and United States Constitutions, 735 ILCS 5/2-209(c), and allows an Illinois court to exercise personal jurisdiction over nonresidents of Illinois on claims arising from, among other things, the "transaction of any business within [I llinois]" and the "commission of a tortious act within [Illinois]". 735 ILCS 5/2-209(a)(1) & (2). Although the Illinois long-arm statute authorizes jurisdiction to the extent permitted by the Illinois Constitution and the United States Constitution, 735 ILCS 5/2-209(c), asserting personal jurisdiction over Defendant --as explained above-- would violate the constitutional requirement of "minimum contacts."

In addition, jurisdiction under the long-arm statute is not automatically asserted merely because Plaintiff, an Illinois corporation, is alleging that it has suffered economic harm. In the context of an alleged infringement of a trademark, Illinois courts have found that the place of sale, not the place of economic harm, determines jurisdiction. See *Berthold Types Ltd. v. European Mikrograf Corp.,* 102 F. Supp. 2d 928, n.1 (N.D. Ill. 2000); see also *Lifeway Foods, Inc. v. Fresh Made, Inc.,* 940 F. Supp. 1316, 1319-20 (N.D. Ill. 1996) ("an Illinois court does not acquire jurisdiction simply because the 'last act' of the tort is an economic loss felt in Illinois when all the conduct contributing to the injury occurred outside of Illinois").

Where courts have propounded the situs of economic harm as the main factor in asserting jurisdiction, there have been additional "entrances" into the forum that have influenced these decisions. This additional entrance requirement was demonstrated in *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. Partnership,* 34 F.3d 410 (7th Cir. 1994), where the Seventh

Circuit upheld jurisdiction over the Metropolitan Baltimore Football Club and the Canadian Football League Indiana.[7] The Seventh Circuit, analogizing the case to *Calder v. Jones,* 465 U.S. 783 (1984), pointed out that the "defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also 'entered' the state in some fashion, as by the sale (in *Calder*) of the magazine containing the defamatory material." *Indianapolis Colts,* 34 F.3d at 412. In *Indianapolis Colts*, the defendants had "entered" the state through cable broadcasts of their football games. *Id.* at 412. Here, as discussed above, Defendant has not "entered" the state through adequate traditional means and has not "entered" the state through the Internet because the Current Website fails to qualify as "minimum contacts." Accordingly, the Illinois Long-Arm Statute should not be interpreted to convey jurisdiction over Defendant in this case.

### III. CONCLUSION

Defendant's contacts with the state of Illinois are clearly not "continuous and systematic" for the Court to assert general jurisdiction, and also fall short of the due process standard for specific jurisdiction because Defendant's only alleged "contact" with Illinois is through its Current Website, which does not make goods or services available for sale online nor does it specifically target Illinois residents (or any residents outside of the Atlanta area). For this Court to assert personal jurisdiction over Defendant would violate its due process rights and offend traditional notions of fair play and substantial justice. Plaintiff is free to pursue legal remedies in a forum where Defendant could reasonably anticipate being haled into court; Illinois is not such a place.

---

[7] Indiana's long-arm statute is substantially similar to Illinois' long-arm statute.

14

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that the Court grant its Motion to Dismiss.

Respectfully submitted,

PRETZEL & STOUFFER, CHARTERED

_Daniel G. Wills_
Daniel G. Wills

Robert Marc Chemers
Daniel G. Wills
William W. Elinski
Pretzel & Stouffer, Chartered
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606-4673
Telephone (312) 346-1973
Facsimile: (312) 346-8242

James J. Wolfson, *Admitted Pro Hac Vice*
Heather B. Sachs, *Admitted Pro Hac Vice*
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, PC
One Fountain Square, Suite 400
11911 Freedom Drive
Reston, Virginia 20190
Telephone: (703) 464-4800
Facsimile: (703) 464-4895
Attorneys for Defendant, SWANKY PARTNERS, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONMAR, INC., )
)
    Plaintiff, )
)   CIVIL ACTION FILE
    v. )
)   No. 02C 1482
SWANKY PARTNERS, INC., )
)
    Defendant. )

## AFFIDAVIT OF PAUL GIBBS

I, Paul Gibbs, of legal age, affirm and state as follows:

1.    I am an adult resident of the State of Georgia.

2.    I give this Affidavit in support of the Defendant's Motion to Dismiss in the above-captioned matter and for any other purpose allowed by law.

3.    I am currently employed by Defendant Swanky Partners, Inc. ("SPI"), a Georgia corporation, as President. I have held this position since approximately July 1997. In my capacity as President, I am familiar with the operation, management, and corporate structure of SPI.

4.    SPI was incorporated in July 1997. SPI's entire business consists of the ownership and operation of a single location, upscale cocktail lounge and nightclub catering to young professionals that does business as The Leopard Lounge. SPI and The Leopard Lounge are both located in Atlanta, Georgia.

5.    My partners and I selected the name "The Leopard Lounge" because we wanted to create a 1950s/1960s-style lounge reminiscent of the "swing era" to capitalize on the re-emerging popularity of such classic vocalists as Frank Sinatra and Dean Martin.



DEFENDANT'S
EXHIBIT

"A"

Since the leopard print was a very popular décor item during that era, we believed that the name "The Leopard Lounge" would be emblematic of the upscale, retro design scheme we desired for our place of business.

6.     At no time during the process of selecting The Leopard Lounge name for SPI's nightclub (which opened in December 1997) did I or anyone that was involved in the process have any knowledge of the existence of Donmar, Inc.'s Leopard Lounge bar in Chicago, Illinois.

7.     SPI is not an Illinois corporation, is not qualified to do business in Illinois, has not registered with the Illinois Office of the Secretary of State to do business in Illinois and has not appointed an agent to receive service of process in Illinois.

8.     SPI has no officers, directors or employees that reside in Illinois, and none of the foregoing have ever visited Illinois on business or transacted business with an entity located in Illinois or an or individual residing in in Illinois on behalf of SPI.  No one on behalf of SPI has even attended a trade show or exhibition in Illinois.

9.     SPI does not have any offices or places of business in Illinois.  It does not own or rent any real estate or personal property in Illinois, and it does not maintain a telephone listing, mailing address or bank account in Illinois.

10.     SPI is not a party to any contract with Illinois residents or resident corporations.  For example, none of SPI's vendors or suppliers are located in Illinois, nor is it aware of any customers that are Illinois residents.

11.     SPI does not advertise in national publications or specific publications targeted to Illinois residents.  SPI does not advertise The Leopard Lounge nightclub on the Internet apart from its website located at www.leopardlounge.com.

12.     From 1998-October 2001, SPI maintained a website at the url www.leopardlounge.com (the "Original Website"). SPI has made good faith efforts to locate screen shots from the Original Website, but has been unable to do so. The Original Website was basically an online brochure for Defendant's nightclub and was completely passive in nature. No goods or services were sold on the Original Website, nor were visitors able to exchange information with Defendant's host computer in any manner. The Original Website did not enable visitors to e-mail the website operator, nor were visitors able to sign-up for a mailing list through the Original Website.

13.     The Original Website was re-launched in October 2001 (the "Current Website") and is essentially an online brochure that describes The Leopard Lounge nightclub, including photographs, sample menus, and a calendar of events. The Current Website also contains directions to The Leopard Lounge nightclub from various locations in Atlanta, Georgia.

14.     SPI does not sell any goods or services on the Current Website, and does not give visitors the opportunity to enter into a contract with SPI via the Current Website.

15.     Visitors to the Current Website have the ability to e-mail SPI and are given the option to sign-up for SPI's mailing list. Not one visitor who has e-mailed SPI or who has signed up for SPI's mailing list via the Current Website, however, has provided an Illinois address.

16.     There are no Illinois residents on SPI's mailing list. Over the past five years, there have been only a handful of non-Georgia residents (though none from Illinois) who have signed up for SPI's mailing list. SPI has intentionally removed these

non-Georgia residents from its mailing list because SPI only targets customers within driving distance from The Leopard Lounge nightclub.

17.   In the spring of 1998, nearly five (5) months after SPI opened The Leopard Lounge in Atlanta, one of SPI's former partners was in Chicago, Illinois on a non-business-related matter and coincidentally patronized Plaintiff's nightclub, where he left his business card with one of Plaintiff's employees as a social gesture of good will. After this encounter, no business was ever transacted between Plaintiff and Defendant.

18.   More than three (3) years after the aforementioned encounter between Plaintiff and Defendant, in August 2001, Defendant received a cease-and-desist letter from Plaintiff's attorney. Defendant, through its attorney, promptly responded to this letter with a suggestion to enter into discussions regarding non-litigious alternatives.

19.   Approximately one (1) month after sending the cease-and-desist letter, in September 2001, Ursula Hutchinson, owner of Plaintiff's nightclub, visited SPI's nightclub to examine the premises. While still in Atlanta after her visit, Ms. Hutchinson called me to introduce herself and informed me that she had visited SPI's nightclub.

20.   Shortly after Ms. Hutchinson returned to Chicago, she, along with a man whom she introduced as her "friend," called me a second time to discuss a potential resolution of a dispute she believed existed between her and SPI. During this second conversation, Ms. Hutchinson acknowledged that she had been fully aware of SPI and its bar, The Leopard Lounge, since my former partner visited her establishment in 1998. When I pointed out to Ms. Hutchinson during this second conversation that there existed other nightclubs named The Leopard Lounge in addition to SPI's and Plaintiff's nightclubs (such as one in Florida), Ms. Hutchinson stated that she was aware of this fact.

4

However, Ms. Hutchinson explained that, just as several other nightclubs named The Leopard Lounge had gone out of business, she had been hoping that SPI's nightclub would similarly "quietly go away." Ms. Hutchinson made a settlement offer during this second telephone conversation which I declined.

20. Since receiving the cease-and-desist letter and since my telephone conversations with Ms. Hutchinson, SPI, through counsel, has made a good faith effort to negotiate an amicable resolution to this dispute with Plaintiff, but has been unsuccessful.

I make this affidavit under the penalty and perjury under the laws of the State of

Georgia. I affirm that the foregoing is true and accurate to the best of my knowledge and

information.

Dated: May 7th, 2002

Paul Gibbs
President, Swanky Partners, Inc.

STATE OF GEORGIA            )

COUNTY OF _Fulton_          )

SUBSCRIBED and SWORN to before me this _8_ day of May , 2002.

[SEAL]

_____
Notary Public

6

LEOPARD LOUNGE ONLINE                                      Page 1 of 1



CLICK HERE TO SIGN UP ON THE MAILING LIST



DEFENDANT'S
EXHIBIT

"B"

## LEOPARD LOUNGE ONLINE



use arrows to scroll

Step back in time - far enough, but not too far - to an era of sharkskin, highballs, subtle sophistication... and fun!

Leopard-drenched walls, velvet-draped furniture, warm stone fireplaces, and a great dance floor downstairs with the best dance music in Atlanta... all in a 2-story turn-of-the-century house. The Leopard Lounge embodies the cocktail lounge on the main level and a great "club" feel downstairs. The best of both worlds!

© 2001 leopardlounge. all rights reserved.        site by tribal chicken designs        choose music | TRACK 1 | TRACK 2 | TRACK 3 |

**CLICK HERE TO SIGN UP ON THE MAILING LIST**

MAY-08-2002  13:04      MINTZ LEVIN                    703 707 5598    P.04/08

LEOPARD LOUNGE ONLINE                                                Page 1 of 1

| Home | About | | Directions | Events | Contact |
|------|-------|--|------------|--------|---------|

tour of the lounge

Decor - 2 levels, outside
patio, fireplaces, lounging,
dance floor, 3 bars

**The Leopard Lounge** - A most
unique cocktail lounge and
nightclub in a 2-story, turn-of-
the-century house.

A large patio with a

click here to turn off tour      click a square or the next button for tour

© 2001 leopardlounge, all rights reserved.    site by tribal chicken designs    choose music | TRACK 1 | TRACK 2 | TRACK 3 | _____

CLICK HERE TO SIGN UP ON THE MAILING LIST

MAY-08-2002  13:05      MINTZ LEVIN                          703 707 5598    P.05/08

LEOPARD LOUNGE ONLINE                                            Page 1 of 1



| Home | About | Tour | | Events | Contact |

**From the Northside:**
- Take 75/85 south to 10th/14th street exit
- Turn left at first stoplight (14th street)
- Go three blocks and pass the Four Seasons Hotel
- Turn right at next stoplight (Crescent Avenue)

use arrows to scroll

© 2001 leopardlounge. all rights reserved.     site by tribal chicken designs

choose music | TRACK 1 | TRACK 2 | TRACK 2 |

CLICK HERE TO SIGN UP ON THE MAILING LIST

MAY-08-2002  13:05      MINTZ LEVIN                      703 707 5598     P.06/08

**LEOPARD LOUNGE ONLINE**                                            Page 1 of 1



| Home | About | Tour | Directions | | Contact |

**Tuesday**
Open 6:00 pm - 2:00 am
Guest Bartender night at 7:00. Come by
check it out. You never know who may be
pouring! Stick around and cuddle up to the
fireplace with your favorite cocktail and enjoy
some great music.

**Wednesday**
Open 6:00 pm - 2:00 am
Lounging at the Leopard Lounge. A great place
to meet after work for cocktails. Later in the night
join Gretchen Goodhead and Stark Naked as
they present **Diver Down - Rock and Roll
Wednesdays** with DJ Money Shot and other
guest DJs from 9pm til 2am. Complimentary
Grey Goose Cocktails courtesy of the Leopard
Lounge from 9 to 10pm. Brought to you by Social
Diva and the Fur Bus.

**Thursday**
Open 5:30 pm - 3:00 am
DJ Mario spins the best grooves you've ever
heard in the upstairs lounge. The patio is the

© 2001 leopardlounge. all rights reserved.   site by tribal chicken designs   choose music | TRACK 1 ||TRACK 2 | TRACK 3 |

**CLICK HERE TO SIGN UP ON THE MAILING LIST**



| Home | About | Tour | Directions | Events |
|------|-------|------|------------|--------|

**Stay In Touch!**
To be notified of upcoming Leopard Lounge events and other special promotions, please sign up on our mailing list

# CLICK HERE TO SIGN UP ON OUR MAILING LIST

For Parties and Event Planning contact:
**Ken Rickenbaker : 404.874.2704**
For all other inquiries, contact:
**Ray Sleradzki 404.875.7562    email@leopardlounge.com**

© 2001 leopardlounge, all rights reserved.    site by tribal chicken designs    choose music| TRACK 1 | TRACK 2 | TRACK 3 |

**CLICK HERE TO SIGN UP ON THE MAILING LIST**

MAY-08-2002 13:05    MINTZ LEVIN    703 707 5598    P.08/08

LEOPARD LOUNGE ONLINE



| Home | About | Tour | Directions | Events | Contact |

Cherry Restaurant and Bar

DJ Mario's House of Music

Wednesday Night Drinking Club

Tribal Chicken Designs

Social Diva

The Fur Bus

© 2001 leopardlounge, all rights reserved.    site by tribal chicken designs    choose music | TRACK 1 | TRACK 2 | TRACK 3 |

CLICK HERE TO SIGN UP ON THE MAILING LIST